IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 24, 2014 at Knoxville

# STATE OF TENNESSEE v. MARK ELIHU COOPER

**Appeal from the Circuit Court for Weakley County**
**No. 2013-CR55    William B. Acree, Jr., Judge**

**No. W2013-02530-CCA-R3-CD  -  Filed September 5, 2014**

Pursuant to a plea agreement, the Defendant, Mark Elihu Cooper, pled guilty to sexual battery by an authority figure, statutory rape by an authority figure, incest, and rape, and the trial court imposed an effective eighteen-year sentence for those convictions. In this appeal as of right, he contends that the trial court erred by enhancing his sentences above the range minimums "without the support of a single enhancement factor." He also argues that consecutive sentencing was improper due to the absence of proof of "residual[] physical and mental damage" to the victim presented at the sentencing hearing. Finally, he submits that the trial court used an "inappropriate consideration[,]" specifically, an ex parte communication with the police chief, in rendering its decisions in both of these regards. Following our review, we affirm the trial court's imposition of an eighteen-year sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which and ROBERT W. WEDEMEYER, J., joined. JOSEPH M. TIPTON, P.J., concurred in results only.

Joseph P. Atnip, District Public Defender; and Noel H. Riley, Assistant Public Defender, for the appellant, Mark Elihu Cooper.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and Kevin McAlpin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
FACTUAL BACKGROUND

On May 6, 2013, a Weakley County grand jury indicted the Defendant for sexual battery by an authority figure (Count 1); statutory rape by an authority figure (Count 2);

incest (Count 3); and rape (Count 4); all counts involving his minor, biological daughter A.T.[1]  See Tenn. Code Ann. §§ 39-13-503, -13-527, -13-532, & -15-302.  The Defendant pled guilty as charged.

At the guilty plea hearing, the trial court received testimony from the Dresden Chief of Police Randal Walker, who worked on this case as a police officer for the City of Martin.  The trial court gave the following reason for prompting this testimony:  "Before he came in, Chief Walker was telling me something about this case, and I told him I would go ahead and put that on the record under oath so there won't be any communications outside.  It concerns some other situations involving the same [victim]."  The trial court then questioned Chief Walker.  Chief Walker testified that the victim had previously been sexually abused by her mother's boyfriend while living in South Carolina; that the Defendant brought the victim back to Tennessee after learning of that abuse; that the Defendant and his daughter then co-habitated with a roommate (his sister's boyfriend); that the roommate began to sexually abuse the victim; that the Defendant was present at the trial against the roommate; and that, after that trial, the Defendant began to have sexual relations with the victim.  Chief Walker opined, "This poor girl has problems.  Her whole life has been messed up by people that just don't care about her."  Defense counsel declined to ask any questions of Chief Walker.

After appropriate questioning of the Defendant's waiver of his various rights, the trial court accepted the Defendant's pleas.  The trial court made the following reservation:  "Determination will be made at a later date as to whether or not you can be sentenced separately for these crimes or whether or not they have to be merged into one."  The Defendant affirmed that he understood.

A sentencing hearing was held on October 17, 2013.  The presentence report was entered into evidence.  The report showed that the thirty-three-year-old Defendant was divorced; had one child, the victim; dropped out of high school in the tenth grade but later obtained his General Equivalency Diploma; attended some college courses; and had been employed by several different companies as a laborer or a driver.  Regarding his criminal history, the Defendant had one February 14, 2013 conviction for passing a worthless check up to $100, with the sentence of eleven months and twenty-nine days suspended to probation following re-payment of the check.

The Defendant provided the following version in the personal questionnaire:

My version is it should not have occurred at all.  She was causing it to happen by coming in a[nd] dropping towels and grabbing me.  But I pray everyday

---

[1] It is the policy of this court to use the initials of victims of sexual abuse.

about what happened and have to deal with the pain this has caused everyone. I just pray to God for her and anyone else. I just want her to grow up happy and healthy and blessed.

Information from an investigative report was also included in the agency statement portion of the presentence report. In the Defendant's statement detailed therein, the Defendant admitted to his knowledge of prior sexual abuse of the victim by other mem. An interview of the victim was also included therein, wherein she recounted previous incidents of sexual abuse at the hands of two other men besides the Defendant. The victim further described multiple instances of sexual abuse by her father, including one occurrence in late November 2012 and another one around Christmas of that year. The victim was fourteen years old during this time period.

At the sentencing hearing, the prosecutor stated that he was relying on these two occurrences described in the victim's statement as the basis for the Defendant's pleas: the Christmas incident for Count 1 (sexual battery by an authority figure); and the November incident for Counts 2, 3, and 4 (statutory rape by an authority figure, incest, and rape, respectively).

The Defendant testified on his own behalf at the sentencing hearing. According to the Defendant, the victim's mother and he were no longer together. The Defendant was aware that, while the victim lived with her mother and when the victim was about eight or nine years old, a boyfriend of the victim's mother was accused of sexual abuse against the victim, although the Defendant did not believe that official charges were ever pursued against that individual. The victim was removed from her mother's care sometime between 2005 and 2006 according to the Defendant. The Defendant was present during the 2010 or 2011 trial of his sister's boyfriend for sexually abusing the victim; he was a potential witness in that case because the victim had told him about the abuse, although he never testified. The Defendant admitted that he sexually abused his daughter during the time they lived together, which followed both of the instances of prior abuse. He clarified his prior statements in the presentence questionnaire about the abuse being the victim's fault: "I was just trying to state part of it, but it is not her fault. I just want her to be happy and blessed and go on having a full life." The Defendant reported that the victim now lived with her aunt.

In rendering its sentencing decision, the trial court relied upon the facts submitted by the State—two occurrences, one in November of 2012 (supporting Counts 2, 3, and 4) and the other around Christmas of 2012 (supporting Count 1). The trial court imposed sentences of six years for Counts 1, 2, and 3, and a sentence of twelve years for Count 4. The trial court ordered partial consecutive sentencing, ordering Counts 2, 3, and 4 to be served

concurrently with one another but consecutively to Count 1,[2] for a total effective sentence of eighteen years in the Department of Correction. The Defendant perfected a timely appeal.

ANALYSIS

On appeal, the Defendant contends that the trial court erred by enhancing the length of his various sentences, by imposing consecutive sentences, and by considering Chief Walker's ex parte communications and subsequent testimony. The State responds that the trial court imposed an effective sentence consistent with the purposes and principles of the Sentencing Act.

The trial court made the following findings in imposing sentence on the Defendant:

> The [c]ourt has considered all the evidence in this case. That evidence consists of the testimony that was presented during the guilty plea, including the testimony of the chief of police of Dresden, Chief Randal Walker, [and] the statements made by . . . [the Defendant], the admissions he made at that time.
> The [c]ourt also has considered the evidence presented today at the sentencing hearing. That evidence consists of the presentence report which is quite thorough and includes a lot of factual information and that was accepted and entered as Exhibit 1 without objection.
> The [c]ourt has also considered the testimony of [the Defendant] and the statements made by counsel and the [c]ourt has finally considered the sentencing statutes and guidelines established by the state legislature.
> The record in this case reflects that [the Defendant] engaged in unlawful sexual conduct with his daughter probably on numerous occasions, according to the information set forth in the presentence report; however, under the admission made by the [S]tate, the [S]tate has relied upon only two separate occurrences . . . .
> The evidence establishes that [the Defendant] engaged in unlawful sexual contact with his daughter. He engaged in oral sex with her as well as vaginal sex. At the time, she was 14 years of age. Incredibly, [the Defendant] comes in in the presentence report and makes several statements to the effect that this is his daughter's fault; 14 years old; she provoked him; it's her fault. Your lack of remorse will be taken into consideration . . . .

---

[2] In his brief, the Defendant asserts that the consecutive or concurrent nature of all counts was not clear from the trial court's decision; we disagree. We further note that the State refers to an effective thirty-year sentence, which is clearly erroneous.

Perhaps the most troubling thing for this [c]ourt is the prior sexual abuse of his daughter by other people. According to the record, according to [the Defendant], when she was eight or nine years old, she was sexually assaulted by her mother's boyfriend. As a result of that, the mother lost the child and I don't suppose has seen the child since then. I don't know. That was several years ago. Also his sister's boyfriend sexually abused her. [The Defendant] was aware of all that. . . . [Y]ou were aware of what your daughter went through, and here you came in and engaged in similar or worse conduct. And what's even worse, your daughter had one person that she could trust, and that was her father. She couldn't trust her mother. You were the only person that she could trust and you took advantage of her then blamed it on her.

The trial court then outlined the purposes and principles of sentencing set forth in Tennessee Code Annotated sections 40-35-102 and -103. After noting that punishment should promote respect for the law and provide an effective general deterrent to others, the trial court commented, "If there's not a need for deterrence in this case, I don't know where there would be one." The trial court then noted the need to avoid depreciating the seriousness of the offenses, stating, "Sentences involving confinement should be based on the following considerations: It is necessary to avoid depreciating the seriousness of the offense and particularly suited to provide an effective deterrence to others likely to commit similar offenses." The trial court observed, "This is a serious offense. [Defendant], I tell you you're probably fortunate that this happened when she was 14 and not at an earlier age because if it had been in an earlier age, you'd have been looking at 40 years in the Department of Correction[]."

The trial court determined that no mitigating factors were applicable and that "no statutory enhancing factors [were] worthy of mention." The trial court made several further observations in its concluding remarks:

I think what I've stated already is sufficient. You knew what had happened to her previously and you took advantage of her and you've shown no remorse, and she was 14 years of age and you engaged in all this sexual conduct with her. [The victim] now doesn't have a mother to live with, doesn't have a father to live with, is having to live with some aunt, and the emotional scars that she's going to have for the rest of her life are not known to us but I can certainly anticipate what they are, and I think we all do.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the

nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b). When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." Id. at 709-10. Moreover, appellate courts may not disturb the sentence even if we had preferred a different result. See id. at 346. The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

## *I. Ex parte Communication*

First, we address the Defendant's argument that the trial court used an "inappropriate consideration" in rendering its sentencing decision, specifically, an ex parte communication with the Dresden police chief. The State notes that the Defendant never objected to this testimony in the proceedings below. At the guilty plea hearing, the trial court announced that it would be hearing testimony from Chief Walker about other incidents of sexual abuse involving the same victim relayed to the court prior to the guilty plea. The trial court directed Chief Walker to testify in open court about the information previously relayed to the trial court and afforded the Defendant an opportunity to cross-examine Chief Walker, but he chose not to do so. We agree with the State that this issue is waived. See Tenn. R. App. P. 36(b) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

## *II. Length*

Next, the Defendant argues that the trial court erred by enhancing his sentencing terms above the range minimums "without the support of a single enhancement factor." The Defendant was a Range I, standard offender convicted of three Class C felonies and one Class B felony; therefore, he was subject to a sentence between three to six years on the Class C felonies and to a sentence between eight to twelve years on the Class B felony. See Tenn. Code Ann. § 40-35-112(a). The trial court imposed the maximum terms of six years for Counts 1, 2, and 3, and of twelve years for Count 4.

As detailed in the trial court's ruling, the trial court did not find any enhancement factors "worthy of mention" or mitigating factors to be applicable to the Defendant. <u>See</u> Tenn. Code Ann. §§ 40-35-113 & -114. However, in imposing the maximum in the various ranges, the trial court explained its sentencing decision, citing to the purposes and principles of sentencing. Enhancement factors were rendered merely advisory by the legislative changes made to the Sentencing Act in 2005. The trial court here found that there was a need for deterrence in this case and that confinement was necessary to avoid depreciating the seriousness of the offense and emphasized the Defendant's lack of remorse.

Sentencing purposes and principles include the following. Section 40-35-102, provides, in pertinent part,

> The foremost purpose of this chapter is to promote justice, as manifested by § 40-35-103. In so doing, the following principles are adopted:
> (1) Every defendant shall be punished by the imposition of a sentence justly deserved in relation to the seriousness of the offense;
> (2) This chapter is to assure fair and consistent treatment of all defendants by eliminating unjustified disparity in sentencing and providing a fair sense of predictability of the criminal law and its sanctions;
> (3) Punishment shall be imposed to prevent crime and promote respect for the law by:
>     (A) Providing an effective general deterrent to those likely to violate the criminal laws of this state;
>     (B) Restraining defendants with a lengthy history of criminal conduct;
>     (C) Encouraging effective rehabilitation of those defendants, where reasonably feasible, by promoting the use of alternative sentencing and correctional programs that elicit voluntary cooperation of defendants; and
>     (D) Encouraging restitution to victims where appropriate;
> (4) Sentencing should exclude all considerations respecting race, gender, creed, religion, national origin and social status of the individual.

Section 40-35-103, reads in its entirety,

> To implement the purposes of this chapter, the following principles apply:
> (1) Sentences involving confinement should be based on the following considerations:
>     (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant;

(2) The sentence imposed should be no greater than that deserved for the offense committed;

(3) Inequalities in sentences that are unrelated to a purpose of this chapter should be avoided;

(4) The sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed;

(5) The potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed. The length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence; and

(6) Trial judges are encouraged to use alternatives to incarceration that include requirements of reparation, victim compensation, community service or all of these.

The stated considerations of the trial court are included within these purposes and principles. Because the application of enhancement and mitigating factors to adjust a sentence was rendered advisory by the 2005 amendments, we reiterate that the trial court may set a sentence anywhere within the applicable range so long as the sentence is consistent with the principles and purposes of the Act, regardless of the presence or absence of mitigating and enhancement factors. Given the dictates of our supreme court in Bise, we cannot say the trial court abused its discretion in imposing the maximum sentence, even in absence of any enhancement factors. See, e.g., State v. Terry Wayne Hawkins, No. E2009-00044-CCA-R3-CD, 2010 WL 1068188, at *4 (Tenn. Crim. App. Mar. 24, 2010) (affirming the trial court's sentencing decision finding no enhancement or mitigating factors applicable but instead increasing the Defendant's sentence based upon the Defendant's lack of remorse and noncompliance with the sexual offender registry requirements).

*III. Consecutive Sentencing*

The Defendant contends that consecutive sentencing was improper due to the absence of proof of "residual[] physical and mental damage" to the victim presented at the sentencing hearing. The trial court ordered consecutive sentencing, finding "every one of [the] elements" of section 40-35-115(b)(5) applicable. Section 40-35-115(b)(5), provides,

The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual[] physical and mental damage to the victim or victims[.]

Our supreme court has recently held that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to consecutive sentencing determinations" "if [the trial court] has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." State v. James Allen Pollard, -- S.W.3d --, No. M2011-00332-SC-R11-CD, 2013 WL 6732667, at *8-9 (Tenn. 2013). Further, "[s]o long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." Id. at *9 (citing Tenn. R. Crim. P. 32(c)(1) ("The order [for consecutive sentences] shall specify the reasons for this decision and is reviewable on appeal."); see also Bise, 380 S.W.3d at 705.

Here, the trial court noted that the victim's interview, detailed in the presentence report, set forth numerous incidents of sexual abuse by the Defendant besides the two charged occurrences. The trial court further stated that this was the Defendant's fourteen-year-old biological daughter, whom he had engaged in both oral and vaginal sex with, and emphasized the Defendant's knowledge of prior abuse of the victim by two other men. The trial court also expressed concern that the Defendant was the "one person that [the victim] could trust" following the prior abuse at the hands of the victim's mother's boyfriend and the Defendant's sister's boyfriend; that the victim could not trust her mother due to that abuse; and that the Defendant "took advantage of [the victim and] then blamed it on her." In its concluding remarks, the trial court noted that the victim was unable to live with either her mother or father, living instead with an aunt, and further anticipated that the victim would have "emotional scars . . . for the rest of her life[.]" The victim suffered sexual abuse at the hands of three different men, one her biological father, by the time she was fourteen years of age. Any failure by the State to adduce additional proof on the residual physical and mental damage done to A.T. by the Defendant does not overcome the strength of the remaining proof necessary for the application of this criterion. Therefore, we conclude that the trial court's finding that sub-part (5) of section 40-35-115(b) applied to the Defendant was properly articulated, that there was no abuse of discretion, and that, for those reasons, its determination is presumed reasonable. The Defendant is not entitled to relief on this issue.

## CONCLUSION

In sum, we conclude that the imposition of enhanced sentencing terms and consecutive sentencing were proper.  Accordingly, we affirm the judgments of the trial court.

_____
D. KELLY THOMAS, JR., JUDGE